**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

LATISHA BREEDEN,

    Plaintiff,    :  Case No. 2:19cv5515

 - vs -          Judge Sarah D. Morrison
              Magistrate Judge Kimberly A. Jolson

FRANK BRUNCKHORST CO., LLC,
              :
    Defendant.

## OPINION AND ORDER

This matter is before the Court on Defendant Frank Brunckhorst Co., LLC's Motion to Dismiss. (ECF No. 8.) Plaintiff LaTisha Breeden filed a Brief in Opposition to the Motion (ECF No. 14) and then she voluntarily dismissed Counts 3 and 4 of her Complaint (ECF No. 15). Finally, Defendant filed a Reply in Support of its Motion to Dismiss. (ECF No. 16.) The Motion is now ripe for decision.

 **I.**  **The Allegations Contained in the Complaint**

For purposes of the pending motions, the Court must accept the allegations in the Complaint as true, drawing all reasonable inferences in favor of the plaintiff.

Following dismissal of two her claims, Ms. Breeden asserts claims for sexual harassment (Count 1), hostile work environment based on sex/gender discrimination and sexual harassment (Count 2), and retaliation (Count 5). In support of these claims, she alleges that she worked for Defendant Frank Brunckhorst Co., LLC[1] ("FBC") as a customer service representative and data

---

[1] Ms. Breeden alleges that Defendant does business as Boar's Head Brands. (Compl. ¶ 2). In its Motion to Dismiss, Defendant states that it does not do business under that name. (ECF No. 8, n.1).

1

entry worker from July 2016 until December 19, 2017. (ECF No. 1, ¶ 16.) She was an "exemplary employee" with "little history of discipline." (*Id*. at ¶ 17.)

Tensions at FBC existed from the time Ms. Breeden started her employment. She was told in her interview that she would need to help train her soon-to-be boss Natalie,[2] even though Ms. Breeden's own training was "ineffective." (*Id*. at ¶¶ 21, 24.) She asserts she was forced to work through lunch and not allowed to leave. (*Id.* at ¶ 18.) At some point after Natalie became her boss, Natalie ripped a document out of Ms. Breeden's hands saying that she "can't have [Breeden] fucking up these accounts, [Breeden] can work on the dummy account since [she] wants to be one." (*Id.* at ¶ 27.) Another employee told Ms. Breeden that this type of conduct by Natalie was "normal" and had caused other employees to leave the department. (*Id.* at ¶ 28.) After only three months at FBC, Ms. Breeden looked for positions in other departments. (*Id.* at ¶ 30.)

At one point, Natalie questioned Ms. Breeden about why people had complained about Natalie. (*Id*. at ¶ 32.) Natalie told her that it "didn't look good" that Ms. Breeden was looking for another position. (*Id.* at ¶¶ 32-33.) Describing this incident as an "interrogation," Ms. Breeden complained to Sherri in Human Resources that she was "uncomfortable due to the hostile work environment caused by Natalie." (*Id.* at ¶ 34.) Sherri told Natalie about the complaint. (*Id.* at ¶ 35.)

In November 2016, there were several incidents involving Ms. Breeden's co-workers. (*Id.* at ¶¶ 36-52.) According to the Complaint, Ms. Breeden's only involvement in these incidents was that she was told that she would have to work late one day because a colleague had gone

---

[2] Ms. Breeden's Complaint does not include the last name of many FBC employees mentioned therein. *See* ECF No. 1.

2

home early. (*Id.*) Ms. Breeden subsequently complained to Sherri in HR about who could take time off, saying that Natalie was almost always confrontational, and that Natalie "was pushing Boar's Head into a hostile work environment." (*Id.* at ¶¶ 50, 60.) Ms. Breeden told Sherri that she did not want to work with Natalie anymore. (*Id.* at ¶ 51.)

In March 2017, Natalie had several "outbursts" that led Ms. Breeden to again complain to HR. (*Id.* at ¶¶ 52-66.) Ms. Breeden also sent videos of Natalie's outbursts to at least one manager at FBC. (*Id.* at ¶ 68.)

Ms. Breeden also alleges that there were several incidents of a sexual nature in the workplace. One example is that Ms. Collette, her co-worker, often listened to "work-inappropriate shows, with segments like *How to Have Sex in an Office*." (*Id.* at ¶ 71.) There was an occasion in which Natalie, Ms. Collette, co-worker Jackie Cockley, and Butch Booth (an FBC warehouse manager) discussed where they could best have sex at FBC. (*Id.* at ¶¶ 72-73.) And, around the summer of 2017, Ms. Colette talked "about bestiality and sex with animals"; Mr. Booth joined the discussion but changed the conversation to a business that Ms. Colette previously ran selling sex toys. (*Id.* at ¶¶ 74-76.) Finally, there was an occasion when Natalie told the office staff that she had walked in on a male FBC manager defecating in the men's room. (*Id.* at ¶¶ 77-80.)

Ms. Breeden also had problems with male purveyors with whom she had to interact as part of her job. For example, Larry (a purveyor from Georgia) "would joke about Breeden getting naked for his phone call." (*Id.* at ¶ 88.) Another purveyor asked Ms. Breeden if her co-worker "was off getting a 'boob job.'" (*Id.* at ¶ 89.) And, on December 5, 2017 and again a week later, Joe, a third purveyor, spoke softly with Ms. Breeden and moaned and grunted during their call; Ms. Breeden thought that Joe was masturbating while on the telephone, but she did not ask

3

him why he was making those noises. (*Id.* at ¶¶ 91-95.) She complained about these incidents with the purveyors and asked to be removed from further telephone contact with Joe but nothing was done. (*Id*. at ¶¶ 90-97.)

Ms. Breeden had a third call scheduled with Joe but she resigned from FBC on the day of the call. (*Id.* at ¶¶ 98-99.) On the day that she resigned, Ms. Breeden met with Natalie, Sherri, and two other managers to tell them that she could not work "in such a hostile work environment where she would be forced to listen to customers masturbate on the phone." (*Id.* at ¶ 100.)

**II.     Analysis**

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

When evaluating a Rule 12(b)(6) motion to dismiss, courts must construe the complaint in the light most favorable to the plaintiff and accept the complaint's allegations as true, drawing all reasonable inferences in favor of the plaintiff. *Coley v. Lucas Cty., Ohio*, 799 F.3d 530, 537 (6th Cir. 2015) (citation omitted); *see also Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). If a plaintiff is bringing a federal employment discrimination claim, she is not required to plead facts establishing a prima facie case under Title VII in order to state a claim for relief. *Keys v. Humana, Inc.*, 684 F.3d 605, 609 (6th Cir. 2012) (citing *Swierkiewicz v. Sorema*, 534 U.S. 506, 510-12 (2002)). "The prima facie case ... is an evidentiary standard, not a pleading requirement." *Swierkiewicz*, 534 U.S. at 510. Rather, a plaintiff "need allege only (a) the statutory basis for [the] claims, and (b) the factual predicate of those claims, such that the

defendants are 'apprise[d] . . . of the [ ] claims and the grounds upon which they rest.'" *Dickinson v. Zanesville Metro. Hous. Auth.*, 975 F. Supp. 2d 863, 871 (S.D. Ohio 2013) (quoting *Lindsay v. Yates*, 498 F.3d 434, 440 (6th Cir. 2007)). Nevertheless, a plaintiff "must allege 'sufficient factual' content from which a court, informed by its 'judicial experience and common sense,' could 'draw the reasonable inference'" that defendant discriminated against her because of her sex. *Keys*, 684 F.3d at 610 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009)).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (internal citations and quotation marks omitted).

### A. Counts 1 and 2: Sexual Harassment and Hostile Work Environment based on Sex/Gender Discrimination and Sexual Harassment

Ms. Breeden's first claim alleges that she was "subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances" from customers, superiors, and co-workers. (Compl. ¶¶ 109-124). In turn, her second claim alleges that she was subjected to "offensive and harassing conduct" by a superior and sexual harassment from a customer. (Compl. ¶¶ 125-138).

Claims for sexual harassment based upon a hostile work environment brought under Title VII or Ohio Rev. Code Chapter 4112 involve four elements. Specifically, a plaintiff must allege that (1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance and created a working

5

environment that was intimidating, hostile, or offensive; and (5) a basis for employer liability exists. *Smith v. Meyer Builders*, No. C-1-03-729, 2006 U.S. Dist. LEXIS 8334, at *10 (S.D. Ohio Mar. 3, 2006). Here, accepting as true all of Ms. Breeden's allegations, she fails to state a plausible claim for relief for hostile work environment claims. While the fifth element is not at issue, the Court need not address the first three elements of her claims because she has not provided sufficient factual allegations to meet the fourth element of her claims.

For the fourth element of a hostile work environment claim, a plaintiff must plead that that the alleged sexual harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Smith,* 2006 U.S. Dist. LEXIS 8334, at *14 (citation and internal quotation marks omitted). A hostile environment encompasses both an objective and a subjective element. That is, "the conduct must be severe enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 463 (6th Cir. 2000).

The Court considers the totality of the circumstances to assess the objective severity or pervasiveness. That review encompasses the following factors: "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "'[O]ffhand comments'" and "'isolated incidents'" do not suffice. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998). The case law sets forth "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Philips v. UAW Int'l*, 854 F.3d 323, 328 (6th Cir. 2017) (noting that,

in many cases, overtly discriminatory statements and racial slurs did not create a hostile work environment under this high standard). For that reason, "[c]onduct that is "merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]omments and harassing acts of a 'continual' nature are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (quoting *Abeita v. TransAmerica Mailings*, 159 F.3d 246, 252 (6th Cir. 1998)). Furthermore, "courts must determine whether the workplace is so permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Grace v. USCAR*, 521 F.3d 655, 678-79 (6th Cir. 2008).

Here, Ms. Breeden's Complaint does not provide sufficient factual allegations for the Court to reasonably infer that the alleged conduct was severe or pervasive enough to create a sexually hostile or abusive work environment. For most of the incidents that she sets forth, she fails to provide any context for when they occurred. Individually or even in combination, these instances fall far short of the objectively severe or pervasive conduct needed to state a claim for relief for a sexually hostile work environment as a matter of law. There are no allegations of physically threatening or humiliating actions against Ms. Breeden. Other than one incident when Natalie "ripped" a document from her, Ms. Breeden does not allege that any of the incidents involving her co-workers or superiors were directed toward her or that they made it difficult for her to do her job. While Plaintiff alleges that she "took offense" and found one conversation to be "highly inappropriate for the workplace" (Comp. ¶ 80), she has not alleged that she was singled out or that she was required to listen to the offensive conversations or programs. And, while the comments made to her by the three purveyors were directed specifically towards her, these isolated incidents are insufficient to give rise to an inference of a sexually hostile work

7

environment. These are insufficient facts to give rise to a reasonable inference that FBC was a workplace "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive so as to alter conditions of her employment and create an abusive working environment. . . ." *Harris*, 510 U.S. at 21 (internal quotations and citation omitted).

A review of decisions from the Sixth Circuit reveals that it takes much more than Ms. Breeden has alleged to state a claim for a hostile work environment. *See, e.g., Rayford v. Illinois Cent. R.R.*, 489 F. App'x 1, 5 (6th Cir. 2012) (finding comments made to a male employee three or four times per week, such as being called "sweet booty" and being told a co-worker "wanted to mix coffee with his cream" and that "Ray got a big dick" for him, were "not so severe and pervasive that a reasonable person would find his work environment hostile and abusive"); *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 707-08 (6th Cir. 2007) (affirming district court's holding that "fifteen specific incidents spanning a two-year period" were "isolated" and "not pervasive"); *see also Williams v. CSX Transp. Co.*, 533 F. App'x 637, 641 (6th Cir. 2013) (conduct directed at others in the workplace weighs against a finding of an objectively hostile work environment).

Ms. Breeden's Complaint fails to provide sufficient factual content for this Court to draw the reasonable inference that a sexually hostile or abusive work environment existed at FBC during her employment there.

**B.     Count 5: Retaliation**

Ms. Breeden's final remaining claim alleges that she complained about the discrimination, sexual harassment, and disparate treatment that she was experiencing and that, as a result, she was subjected to adverse employment actions. (ECF No. 1, ¶¶ 172-177.) The only adverse employment action that she has alleged is constructive discharge.

To demonstrate that she was constructively discharged, Ms. Breeden must "show that (1) 'the employer deliberately created intolerable working conditions, as perceived by a reasonable person,' and (2) the employer did so 'with the intention of forcing the employee the quit . . . .'" *Logan v. Denny's*, 259 F.3d 558, 568-69 (6th Cir. 2001) quoting *Moore v. Juka Welding*, 171 F.3d 1073, 1080 (6th Cir. 1999). Both the employer's intent and the employee's objective feelings must be considered. When determining whether the first prong is met, seven factors guide the analysis: whether the plaintiff experienced "(1) demotion, (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000).

Looking at these factors as applied to Ms. Breeden, the Complaint does not allege any facts that would plausibly show that she was constructively discharged. She does not allege that she was demoted or that she suffered a reduction in salary or job responsibilities. She was not subject to reassignment or to offers of early retirement or less favorable employment terms. While she does allege that she was harassed, she was not humiliated or badgered and there are no allegations that such harassment was calculated to encourage her resignation.

Accordingly, Ms. Breeden has not set forth sufficient facts to allege that she was constructively discharged. And because constructive discharge is the only adverse action that she alleges was taken against her in retaliation for her assumed protected conduct, she has not stated a claim for retaliation.

**III.    Leave to Amend**

9

Ms. Breeden seeks leave to amend her Complaint should the Court find FBC's arguments persuasive. (ECF No. 14 at 14.) Courts have discretion to determine whether to dismiss a complaint or to grant the plaintiff the opportunity to amend. *See United States ex rel. Bledsoe v. Cmty. Health Syst., Inc.*, 342 F.3d 634, 644 (6th Cir. 2003). When a "more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice." *Id.*, citing *EEOC v. Ohio Edison Co.*, 7 F.3d 541, 546 (6th Cir. 1993) (quotation omitted)

Accordingly, the Court **GRANTS** Ms. Breeden leave to file an amended complaint consistent with the foregoing discussion within **FOURTEEN DAYS** from the entry of this Order. If Plaintiff files an Amended Complaint, FBC's Motion to Dismiss will be MOOT. (ECF No. 8.) If no amended complaint is filed within fourteen days, the Court will GRANT FBC's Motion to Dismiss (ECF No. 8) and will deem Plaintiffs Complaint dismissed with prejudice in accordance with the analysis set forth herein.

**IV. Conclusion**

For the reasons set forth above, the Court **GRANTS** Plaintiff leave to amend her Complaint within fourteen days of this Order.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**