**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

LATISHA BREEDEN,

               Plaintiff,       :       Case No. 2:19-cv-5515

   - vs -                           Judge Sarah D. Morrison
                                    Magistrate Judge Kimberly A. Jolson

FRANK BRUNCKHORST CO., LLC,

                                 :

               Defendant.

**OPINION AND ORDER**

This matter is before the Court on Defendant Frank Brunckhorst Co., LLC's Motion to Dismiss (ECF No. 19), Plaintiff LaTisha Breeden's Brief in Opposition (ECF No. 23), and Defendant's Reply (ECF No. 24). For the following reasons, Defendant's Motion is **GRANTED.**

**I.    Procedural History**

On December 18, 2019, Plaintiff LaTisha Breeden filed a Complaint (ECF No. 1) alleging claims for sexual harassment (Count 1), hostile work environment based on sex/gender discrimination (Count 2), sex/gender discrimination in violation of Title VII (Count 3) and Ohio Revised Code Chapter 4112 (Count 4), and retaliation (Count 5). On February 14, 2020, Defendant Frank Brunckhorst Co., LLC ("FBC") moved to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 8.) Ms. Breeden then moved to voluntarily dismiss Counts 3 and 4. (ECF No. 15.)

After Defendant's Motion was fully briefed (ECF Nos. 14 16), the Court issued an Opinion and Order (ECF No. 17) finding that Plaintiff's Complaint failed to set forth sufficient facts to plausibly allege Counts 1, 2 and 5. However, instead of granting Defendant's Motion, the Court granted Plaintiff leave to file an amended complaint to address the shortfalls noted by the

Court. Having done so on May 5, 2020 (ECF No. 18), the matter again comes before the Court on a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6). (ECF No. 19.) The matter is now fully briefed and ripe for review. (ECF Nos. 23, 24.)

### II. Allegations Contained in the Amended Complaint

In the Amended Complaint, Ms. Breeden asserts claims for sexual harassment (Count 1), hostile work environment based on sexual harassment and sex/gender discrimination (Count 2), and retaliation (Count 3). For purposes of the pending Motion, the Court must accept the allegations in the Amended Complaint as true, drawing all reasonable inferences in favor of Ms. Breeden.

Ms. Breeden alleges that she worked for FBC as a customer service representative and data entry worker from July 2016 until December 19, 2017. (Amend. Compl., ¶ 16, ECF No. 18.) She was an "exemplary employee" with "little history of discipline." (*Id.* ¶ 17.)

Tensions at FBC existed from the time Ms. Breeden started her employment. She was told in her interview that she would need to help train her soon-to-be boss, Natalie[1], even though Ms. Breeden's own training was "ineffective." (*Id.* ¶¶ 21, 24.) She also asserts she was forced to work through lunch and not allowed to leave. (*Id.* ¶ 18.) At some point after Natalie became her boss, she ripped a document out of Ms. Breeden's hands stating that she "can't have [Breeden] fucking up all these accounts, [Breeden] can work on the dummy account since [she] wants to be one." (*Id.* ¶ 27.) Another employee told Ms. Breeden that this type of conduct by Natalie was "normal" and had caused other employees to leave the department. (*Id.* ¶ 28.) After only three months at FBC, Ms. Breeden looked for positions in other departments. (*Id.* ¶ 30.)

---

[1] Ms. Breeden's Amended Complaint does not include the full names of many FBC employees and customers mentioned therein. (*See* ECF No. 18.)

At one point, Natalie questioned Ms. Breeden about why people had complained about her. (*Id*. ¶ 32.) Natalie told her that it "didn't look good on [her]" that Ms. Breeden was looking for another position. (*Id.* ¶¶ 32–33.) Describing this incident as an "interrogation," Ms. Breeden complained to Sherri in Human Resources that she was "uncomfortable due to the frequent and extreme reactions Natalie [] had nearly every time something did not go exactly as she wished it to." (*Id.* ¶ 34.) Sherri told Natalie about the complaint causing Natalie to yell at Ms. Breeden for "ratting [her] out." (*Id.* ¶ 35.)

In November 2016, there were several incidents involving Ms. Breeden's co-workers. (*Id.* ¶¶ 36–47.) According to the Amended Complaint, Ms. Breeden's only involvement in these incidents was that she was told that she would have to work late one day because a colleague had gone home early. (*Id.* ¶ 42.) Ms. Breeden subsequently complained to Sherri in HR about who could take time off, saying that Natalie was almost always confrontational, and that Natalie "was pushing FBC into a hostile work environment." (*Id.* ¶¶ 44–45.) Ms. Breeden told Sherri that she did not want to work with Natalie anymore, but she was never moved or allowed to transfer. (*Id.* ¶ 47.) In March 2017, Natalie had several "outbursts" that led Ms. Breeden to again complain to HR. (*Id.* ¶¶ 48–57.) Ms. Breeden also sent videos of Natalie's outbursts to at least one manager at FBC. (*Id.* ¶ 62.)

Ms. Breeden alleges several incidents of a sexual nature that occurred in the workplace.

First, Billie Jo Collette, her co-worker, often listened to "work-inappropriate shows, with segments like *How to Have Sex in an Office*." (*Id.* ¶ 65.) According to the Amended Complaint, Ms. Collette listened to these shows throughout Ms. Breeden's employment, including when Natalie was around. (*Id.*) Ms. Breeden found this radio show severely offensive but the show was never turned off when she asked. (*Id.* ¶¶ 66–67). Instead, nearly every time the radio show came

3

on, Natalie, Ms. Collette, co-worker Jackie Cockley, and Butch Booth, a warehouse manager, discussed where they could best have sex at FBC. (*Id.* ¶¶ 68, 70.) Ms. Breeden found these conversations to be "severely offensive." (*Id.* ¶ 69.)

Next, around the summer of 2017, Ms. Colette talked "about bestiality and sex with animals," stating: "Hell yeah I watched it. It was interesting and I wanted to watch, but would never do it." (*Id.* ¶¶ 71–72.) Mr. Booth joined the discussion but changed the conversation to discussing a business that Ms. Colette previously ran selling sex toys. (*Id.* ¶ 73.) According to the Amended Complaint, "[t]hese conversations about employees' sex lives, sex with animals, and other similar conversations were pervasive throughout FBC and Breeden had to listen to them numerous times each month of her employment." (*Id.* ¶ 75.) Ms. Breeden found these conversations to be "severely offensive." (*Id.* ¶ 74.)

There was another occasion when Natalie told the office staff that she had walked in on a male FBC manager defecating in the men's room. (*Id.* ¶ 76.) Afterwards, the FBC manager came in and joked about how Natalie "could at least have handed him some toilet paper." (*Id.* ¶ 77.) This conversation was repeated by Natalie multiple times. (*Id.* ¶ 78.) Ms. Breeden found this conversation offensive. (*Id.* ¶ 79.)

Ms. Breeden also had problems with male purveyors with whom she had to interact as part of her job. Larry, a purveyor from Georgia, "would 'joke' about Breeden getting naked for his phone call." (*Id.* ¶ 86.) According to Ms. Breeden, these comments were made each time she spoke with Larry, and Ms. Breeden believed these comments were made because of her sex/gender. (*Id.* ¶¶ 87–89.) Ms. Breeden found the comments "severely offensive." (*Id.* ¶ 89.) Another purveyor, Bob Smith, asked Ms. Breeden if her co-worker "was off getting a 'boob job.'" (*Id.* ¶ 90.) Ms. Breeden claims that Mr. Smith's question about Ms. Cockley's breasts

4

"was offensive to her and representative of the sexually-charged environment that FBC constantly forced Breeden into." (*Id.* ¶ 91.) Again, she believed these comments were directed at her because of her sex/gender. (*Id.* ¶ 92.) Ms. Breeden repeatedly complained about these calls to Natalie but no remedial action was taken. (*Id.* ¶ 94.)

On December 5, 2017 and again a week later, Joe, a third purveyor, spoke softly with Ms. Breeden and moaned and grunted during their call; Ms. Breeden claims that Joe was masturbating while on the telephone. (*Id.* ¶¶ 95–97.) This severely offended Ms. Breeden. (*Id.* ¶ 96.) Ms. Breeden believes this behavior was directed at her based on her sex/gender. (*Id.* ¶ 98.) She complained about the incidents with the purveyors and asked to be removed from further telephone calls with Joe but was told that "she must continue accepting calls, even from masturbating customers." (*Id.* ¶¶ 103–04.) "Feeling sick that she would have to listen to the customer masturbating again and returning to the sexually hostile work environment, Breeden called off work that Monday." (*Id.* ¶ 109.) The next day, she resigned. (*Id.* ¶ 110.) Ms. Breeden then met with Natalie, Sherri, and two other managers to tell them that she could not work "in such a hostile work environment where she would be forced to listen to customers masturbate on the phone, among other things." (*Id.* ¶ 111.)

### III. Analysis

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has

5

> facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). The complaint need not contain detailed factual allegations, but it must include more than labels, conclusions, and formulaic recitations of the elements of a cause of action. *Directv, Inc. v. Treesh*, 487 F.3d, 471, 476 (6th Cir. 2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

### A. Counts 1 and 2: Sexual Harassment and Hostile Work Environment based on Sex/Gender Discrimination and Sexual Harassment

Ms. Breeden's first claim alleges that she was "subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances" from customers and co-workers. (Amend. Compl., ¶ 125.) Her second claim alleges that she was subjected to "offensive and harassing conduct" based on her sex/gender, as well as sexual harassment from FBC customers and employees. (*Id.* ¶ 145.)

Claims for sexual harassment based upon a hostile work environment brought under Title VII or Ohio Rev. Code Chapter 4112 involve five elements. Specifically, a plaintiff must allege that "(1) she is a member of a protected class; (2) she was subjected to unwelcome sexual harassment; (3) the harassment complained of was based on sex; (4) the harassment had the effect of unreasonably interfering with Plaintiff's work performance and created a working environment that was intimidating, hostile, or offensive; and (5) a basis for employer liability

6

exists." *Smith v. Meyer Builders*, No. C-1-03-729, 2006 WL 543706, at *3 (S.D. Ohio Mar. 3, 2006).

There is no dispute that Ms. Breeden is a member of a protected class. Ms. Breeden has also adequately pled that she was subjected to unwelcome sexual harassment in the form of sexual comments and advances. (Amend Compl., ¶ 86 ("Larry . . . would 'joke' about Breeden getting naked for his phone call."), ¶ 90 ("Bob Smith . . . asked Breeden . . . if [Ms. Cockley] was off getting a 'boob job.'") ¶¶ 96–97 (alleging that Joe twice masturbated while on the phone with her).)

Element three narrows the focus of the Court's inquiry. While Ms. Breeden lays out all of the sexually charged and harassing behavior she was exposed to during her time at FBC, she only alleges that the harassment by the male purveyors (Larry, Bob, and Joe) was directed at her based on her sex/gender. (*Id.* ¶¶ 87, 92, 98.) While the conversations and activities by her FBC colleagues and supervisor may have been offensive to her, there is no allegation that any of this conduct was directed at her based on her sex/gender. *See Bowman v. Shawnee State Univ.*, 220 F.3d 456, 464 (6th Cir. 2000) ("[W]hile [the plaintiff] recites a litany of perceived slights and abuses, many of the alleged harassing acts cannot be considered in the hostile environment analysis because [the plaintiff] has not shown that the alleged harassment was based upon his status as a male."). Furthermore, there is nothing alleged in the Amended Complaint that allows the Court to infer that Ms. Breeden's sex/gender was a motivation for her co-workers' behavior. *Id.* In fact, three out of the four FBC employees complained of are women. And Ms. Breeden makes no attempt to allege facts sufficient to meet the standard for same-sex harassment under

7

*Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757 (6th Cir. 2006)[2]. Accordingly, the Court will only consider the allegations made regarding the purveyors as probative of the next element.

For the fourth element of a hostile work environment claim, the plaintiff must allege that that the harassment is "sufficiently severe or pervasive to alter her employment conditions and create an abusive or hostile working environment." *Smith,* 2006 WL 543706, at *5. A hostile environment encompasses both an objective and a subjective element. *Bowman*, 220 F.3d at 463. "[T]he conduct must be severe or pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive." *Id.*

The Amended Complaint sufficiently alleges that Ms. Breeden subjectively perceived the FBC work environment to be hostile. She stated several times in the Amended Complaint that she found the purveyors' conduct to be "severely offensive" (¶¶ 85, 89, 91, 96, 100) and she complained about "all these instances to Natalie." (¶¶ 94, 104.) Ms. Breeden also alleges that she resigned from her position at FBC due to the hostile and abusive work environment, particularly FBC's attempt to "force Breeden to accept that customers may masturbate on the phone with her while she performed her essential job functions." (*Id.* ¶¶ 107–08.) Still, the Court must also determine whether the conduct alleged can also be considered objectively hostile.

The Court considers the totality of the circumstances to assess the objective severity or pervasiveness. That review encompasses the following factors: "the frequency of the

---

[2] The Supreme Court has provided three ways that a plaintiff can establish a hostile work environment based on same-sex harassment: "(1) where the harasser making sexual advances is acting out of sexual desire; (2) where the harasser is motivated by general hostility to the presence of [the same gender] in the workplace; and (3) where the plaintiff offers 'direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace.'" *Id.* at 765 (quoting *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 80–81 (1998)).

discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "'Simple teasing'" and "'offhand comments'" do not suffice. *Barrett v. Whirlpool Corp.*, 556 F.3d 502, 515 (6th Cir. 2009) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998)). The case law sets forth "a relatively high bar for what amounts to actionable discriminatory conduct under a hostile work environment theory." *Hunter v. General Motors LLC*, 807 F'Appx 540, 545 (6th Cir. 2020) (internal quotations omitted). For that reason, "[c]onduct that is merely offensive" is insufficient to support a hostile work environment claim. *Harris*, 510 U.S. at 21. "[C]omments and harassing acts of a 'continual' nature are more likely to be deemed pervasive." *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 333 (6th Cir. 2008) (citing *Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 252 (6th Cir. 1998)). Furthermore, courts must determine whether the "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris*, 510 U.S. at 21 (internal quotations and citations omitted); *Banerjee v. Univ. of Tennessee*, No. 19-6009, 2020 WL 3485818, at *9 (6th Cir. June 26, 2020).

The allegations in the Amended Complaint do not support that the alleged sexual harassment by the purveyors was sufficiently pervasive to alter the conditions of Ms. Breeden's employment. Although similar comments about whether Ms. Breeden was nude "were made each time Breeden spoke with him" (Amend Compl., ¶ 89), there is no information about how many times Ms. Breeden took calls from Larry during her employment with FBC. Additionally, Ms. Breeden alleges that Bob asked her an offensive question about Ms. Cockley's breasts a single time, and Joe masturbated while on the phone with her twice. These alleged harassing acts

9

were not so frequent or continual in nature that a reasonable person would find the FBC work environment hostile on the basis of pervasiveness. Thus, the question is are these alleged acts by the purveyors objectively severe enough to meet the required threshold at the pleading stage? *See Harris,* 510 U.S. at 21–22 (discussing that the phrase is "severe *or* pervasive" not severe *and* pervasive (emphasis added)). The Court finds they are not.

It is well established that "acts of touching and unwelcome physical contact . . . establish an element of physical invasion . . . [that] is more severe than harassing comments alone." *Hawkins,* 517 F.3d at 333–35. And that these acts, on their own, can often form the basis for a hostile work environment claim. *Jackson v. Cty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007) ("One instance of conduct that is sufficiently severe may be enough."). The Seventh Circuit has described the severity of sexual harassment as falling on a spectrum:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

*Baskerville v. Culligan, Int'l*, 50 F.3d 428, 430 (7th Cir. 1995) (internal citations omitted).

The Sixth Circuit has declined to find isolated incidents severe enough to create a hostile work environment except for in cases of "extreme incidents such as rape or sexual assault." *Kalich v. AT&T Mobility, LLC*, 679 F.3d 464, 474 (6th Cir. 2012); *Carter v. Youth Opportunity Invs., LLC,* No. 3:19-cv-0177, 2019 WL 1491739, at *3 (M.D. Tenn. Apr. 4, 2019) ("In the Sixth Circuit, a single act of sexual assault may give rise to an actionable claim for the creation of a sex-based hostile work environment."). Here, Plaintiff's allegations as to Bob and Larry fall into the category of vulgar banter. As to Joe, she alleges two incidents that Joe masturbated while she was on the phone with him. Joe's alleged conduct does not parallel sexual assault. And even if

10

the Court found that the acts complained of were similar in nature to instances of unwanted physical contact, the case law does not support a finding of hostile work environment based on only two such instances, even coupled with a few sexually suggestive comments from other individuals aimed at Plaintiff during the same timeframe. *Compare Bowman*, 220 F.3d at 459, 464 (finding the claims insufficiently severe or pervasive where the plaintiff alleged that his supervisor had rubbed his shoulder once and "grabbed his buttocks" on another occasion, even considered in conjunction with a handful of sexually suggestive comments by the supervisor); *Burnett v. Tyco Corp.*, 203 F.3d 980, 981, 984–85 (6th Cir. 2000) (finding that the conduct alleged was not sufficiently severe or pervasive where the plaintiff alleged that her supervisor "placed a pack of cigarettes containing a lighter inside [the plaintiff's] tank top and brassiere strap," leaving her "stunned, shocked, and exposed"); *Moorer v. Summit Cty. Dep't of Job & Family Servs.*, No. 5:10CV457, 2011 WL 2746098, at *1, 6 (N.D. Ohio July 14, 2011) (dismissing hostile work environment claim on the basis that the alleged conduct was not sufficiently severe or pervasive even where the plaintiff's supervisor "smacked her on the rear end" and had "made comments and unwanted advances of a sexual nature toward Plaintiff for several months preceding this incident") *with Hawkins,* 517 F.3d at 334–35 (finding a prima facie case of hostile work environment where the male supervisor made continual requests for oral sex, regularly rubbed against the plaintiff with his private parts, and touched or grabbed her "every time" they worked together).

      Even though Plaintiff alleges that FBC also told her she would have to accept future calls "even from masturbating customers" (Amend Compl., ¶ 104), the Court must speculate that Joe or anyone else would in fact masturbate during future calls in order to consider this for the purpose of finding the conduct severe. The Court declines to do so. *See Carter*, 2019 WL

11

1491739, at *4 (explaining that the court will not consider an alleged threat of misconduct as equivalent to actually engaging in such conduct for the purpose of a hostile work environment claim). While the new details alleged in Plaintiff's Amended Complaint are undoubtedly inappropriate and offensive, Plaintiff still fails to allege facts that could be found to be sufficiently severe in order to give rise to a claim for hostile work environment.

Accordingly, Defendant's Motion is **GRANTED** as to Counts 1 and 2.

    **B.**    **Count 3: Retaliation**

Ms. Breeden's third claim alleges that she complained about the discrimination, sexual harassment, and disparate treatment that she was experiencing and that, as a result, she was subjected to adverse employment action. (Amend Compl., ¶¶ 163–64.) The only adverse employment action that she has alleged is constructive discharge.

To demonstrate a constructive discharge, Ms. Breeden must allege that "(1) the employer . . . deliberately create[d] intolerable working conditions, as perceived by a reasonable person, and (2) the employer did so with the intention of forcing the employee to quit . . . ." *Logan v. Denny's, Inc.*, 259 F.3d 558, 568–69 (6th Cir. 2001) (internal quotations omitted). Both the employer's intent and the employee's objective feelings must be considered. *Id.* at 569. When determining whether the first prong is met, the Sixth Circuit has adopted seven factors that guide the analysis: whether the plaintiff experienced "(1) demotion, (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement or continued employment on terms less favorable than the employee's former status." *Id.* (quoting *Brown v. Bunge Corp.*, 207 F.3d 776, 782 (5th Cir. 2000)).

Looking at these factors as applied to Ms. Breeden, the Amended Complaint does not allege any facts that would plausibly show that she was constructively discharged. She does not allege that she was demoted or that she suffered a reduction in salary or job responsibilities. She was not subject to reassignment or to offers of early retirement or less favorable employment terms. While Ms. Breeden does allege facts that could be considered harassing, she does not allege that FBC allowed those actions to occur in order to encourage her resignation. Making conclusory statements that Ms. Breeden was "constructively terminated" and "retaliated against" are not sufficient. (*See* Amend Compl., ¶¶ 118–122.) Ms. Breeden has not set forth sufficient facts to allege that she was constructively discharged. And because constructive discharge is the only adverse action that she alleges was taken against her in retaliation for her assumed protected conduct, she has not stated a claim for retaliation.

Accordingly, Defendant's Motion is **GRANTED** as to Count 3.

IV. Conclusion

For the reasons set forth above, the Court **GRANTS** Defendant's Motion to Dismiss. (ECF No. 19). The Amended Complaint is **DISMISSED** with prejudice. (ECF No. 18). The Clerk is **DIRECTED** to **TERMINATE** this case from the docket records of the United States District Court for the Southern District of Ohio, Eastern Division.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**